**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>  Plaintiff,<br><br>v.<br><br>Joseph Anthony Norris, Jr.,<br><br>  Defendant. | No. CR-18-01435-001-TUC-JAS (LAB)<br><br>**ORDER** |

Pending before the Court is a Report and Recommendation ("R & R") (Doc. 97) issued by United States Magistrate Judge Bernardo P. Velasco that recommends granting Defendant Joseph Antony Norris, Jr.'s Motion to Suppress Statements and Consent (Doc. 14)[1] and denying Defendant's Motion to declare the checkpoint unconstitutional (Doc. 15). The government timely filed an Objection to the R & R (Doc. 98). Mr. Norris filed a response to the government's objection (Doc. 101). For the reasons stated below, the R & R is adopted, in part.

---

[1] Magistrate Judge Velasco characterizes this motion as a "Motion to Suppress Physical Evidence." (Doc. 97 at 4.) This characterization captures Defendant's assertion that any consent was not voluntary. (Doc. 14 at 4.)

## BACKGROUND[2]

On December 11, 2017, at approximately 5:00 p.m., a blue vehicle with two Tohono O'odham occupants approached the Border Patrol Checkpoint on Federal Route 15, approximately 55 to 60 miles North of the United States border with Mexico. Mr. Norris was the driver of the vehicle. The primary Border Patrol duty agent, Agent Donnelly, on the driver's side of the vehicle asked about the occupants' immigration status and concluded that both of occupants appeared nervous. Agent Gears[3] was on the passenger side of the vehicle and waived for it to be sent to secondary. He then asked Agent Reyes, who was on the passenger side of the vehicle with Agent Gears, to retrieve Agent Reyes' service dog ICE-A. Agent Reyes walked over to the government vehicle where ICE-A was kenneled.

Once at secondary, Agent Donnelly instructed Mr. Norris to turn off the ignition, put the car key on the roof of the car, and step out of the car. Agent Donnelly informed Mr. Norris the vehicle was going to be inspected. As Mr. Norris got out the car, Agent Donnelly asked Mr. Norris if the K-9 could do an interior or exterior sniff of the car. Mr. Norris answered in the affirmative and waited in a secondary seating area as directed.

When Agent Reyes was advised consent was given, he and ICE-A started a systematic search of the vehicle's interior, starting with the front of the vehicle. As soon as the two approached the vehicle, ICE-A rushed to the driver's seat and refused to move his head, fixing it on the driver's side seat towards the buckle location. Agent Reyes ended up using a minor audible reward to distract him away from that area. Once ICE-A was taken back to his kennel, Agent Reyes searched that area, he found some marijuana residue referred to as flake. Agent Reyes then looked in between the seat and console, where he

---

[2] The facts in this section have been taken from the R & R. The Court has added facts from the transcripts and record. The Court may not reject the Magistrate Judge's finding of fact and credibility determinations without holding a *de novo* evidentiary hearing. *United States v. Ridgway*, 300 F.3d 1153, 1157 (9th Cir. 2002). The Court does not believe that an evidentiary hearing is required in this case and therefore adopts the Magistrate Judge's finding of facts and credibility determinations.
[3] There was discussion during the briefing and testimony regarding Agent Gears smelling a strong sent of Febreze or some other masking agent. Magistrate Judge Velasco does not seem to credit this testimony and as the government is resting on consent, the testimony is relevant. The government does not suggest that the agents possessed probable cause.

retrieved the semi-automatic pistol that had no ammunition magazine. Reyes then gave the gun to another agent to determine if there was a bullet cartridge in the chamber.

Concurrently, a record check on the two men was conducted. Agents then found that the car was registered to a woman, the passenger had an active warrant and the driver, Mr. Norris, was a convicted felon. The Tohono O'odham Police Department was called, and an officer responded around 6:00 p.m. the same day. The Tohono O'odham Police Department took over the case upon arrival. No arrests or federal prosecution was affected on December 11, 2017. There was no evidence indication the vehicle trunk lid was ever opened to look for people or contraband.

**Discussion[4]**

First, the Court finds the R& R appropriately resolved the issue regarding the Immigration Checkpoint. The Court agrees with the R & R that the checkpoint in this matter is constitutional. Defendant did not object to this. The only remaining issue is if the search of the vehicle violated the Fourth Amendment.

"[A] search conducted pursuant to a valid consent is constitutionally permissible." *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). "It is the government's burden to prove that the consent was freely and voluntarily given." *United States v. Patayan Soriano*, 361 F.3d 494, 501 (9th Cir. 2004). Whether the consent is valid is determined from the "totality of all the circumstances." *Id*.

Previous cases from the United States Court of Appeals for the Ninth Circuit have identified five non-exhaustive factors to consider when determining voluntariness of consent. *Id*. at 502. These are: (1) whether defendant was in custody; (2) whether the officers had their guns drawn; (3) whether Miranda warnings were given; (4) whether the defendant was notified that he had the right not to consent; and (5) whether the defendant had been told a search warrant could be obtained. *see United States v. Jones*, 286 F.3d 1146

---

[4] The Court reviews de novo the objected-to portions of the Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Crim R. 59(b). The court reviews for clear error the unobjected to portions of the Report and Recommendation. *Johnson v. Zema Systems Corp*., 170 F.3d 734, 739 (7th Cir. 1999); *see also Conley v. Crabtree*, 14 F. Supp. 2d 1203, 1204 (D. Or. 1998).

(9th Cir. 2002).

In *Patayan Soriano*, the defendant was sent to secondary after arriving at a permanent checkpoint. 964 F.2d at 884. At secondary an agent questioned the defendant and asked for consent to search the car while the defendant is still in the vehicle. *Id*. The agent searched the car compartments, asking for and receiving consent prior to searching each container. *Id*. The agent found a "brick-like bundle," which was later determined to be cocaine. *Id*. The defendant moved to suppress the search, which the district court denied. *Id*. The Ninth Circuit looked at the five factors and determined that the consent was voluntary. *Id*. at 885.

In the instant case, Mr. Norris was told that the car was going to be inspected before consent was requested. There was no consent obtained from Mr. Norris as to this inspection. Agent Donnelly instructed Mr. Norris to get out of the vehicle and surrender the car key on to the roof. After Mr. Norris was out away from the vehicle, Agent Donnelly made a request to him for permission to conduct a dog sniff in the interior of the car. Mr. Norris answered in the affirmative.

The five factors are not exhaustive, given the totality of the circumstances, the Court finds that the consent was obtained under coercive circumstances and therefore was not voluntary. It is clear that Mr. Norris was seized at the checkpoint. He could not leave secondary at the checkpoint until completion of the search of the vehicle, prior to which he was told to leave the car and surrender keys to the vehicle. There were no Miranda warnings or acknowledgement that Mr. Norris could withhold consent. While there were many guns present, none of these seems to have been used or referenced prior to obtaining consent. Mr. Norris was never told a search warrant could be obtained. Additionally, unlike the agent in *Patayan Soriano*, the agent in this case did not ask for consent multiple times, as it could be an indication for defendant that withholding consent is an option. In the similar vein, unlike the agent in *Patayan Soriano*, the agent in this case told Mr. Norris an inspection was going to be conducted without asking for consent, then instructed Norris to step outside the car, surrender car keys before he asked for consent to search the vehicle,

which could be perceived as if not given consent to the search, Norris would not be able to get the vehicle back and also, in that situation, Norris was not able to leave the checkpoint with the vehicle.

This event occurred at an immigration checkpoint, where agent can conduct a search for hidden illegal aliens without individualized suspicion. The only area the illegal aliens can be hidden in this case is the rear area of the car, however, there is no evidence presented suggesting a search was conducted there.

The search conducted in this case exceeded the limit that is permitted for this checkpoint. Arrests or searches at immigration checkpoints must be justified by either probable cause or consent. *Martinez-Fuerte*, 428 U.S. at 567, 96 S. Ct. at 3087. Two United States citizens of Tohono O'odham descent should not have been subject to a general search of their car when there is no probable cause or valid consent obtained.

### **Conclusion**

In light of the foregoing discussion, IT IS HEREBY ORDERED as follows:

(1) The R & R (Doc. 97) is adopted, in part.

(2) Defendant's Motion to Suppress (Doc. 14) is granted.

(3) Defendant's Motion to Suppress (Doc. 15) is denied.

(4) This case is referred back to Magistrate Judge Bowman for pertinent pretrial proceedings.

Dated this 12th day of August, 2019.

Honorable James A. Soto
United States District Judge